# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## BRYSON CITY DIVISION

### CIVIL CASE NO. 2:11cv47

| | |
|---|---|
| SHERI L. POST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### MEMORANDUM OF DECISION AND ORDER

**THIS MATTER** is before the Court on the Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] and the Defendant's Motion for Summary Judgment [Doc. 15].

### PROCEDURAL HISTORY

On September 20, 2007, the Plaintiff applied for disability benefits and supplemental security income alleging an onset date of April 1, 2005 and disability due to chronic neck pain, left elbow pain, a sleep disorder, depression and anxiety. [Administrative Transcript (Tr.) 263-273; 293]. The claims were denied on February 11, 2008 and again on October 2, 2008 after reconsideration. [Tr. 204-226; 228-236].

On December 31, 2008, after obtaining counsel, the Plaintiff requested a hearing before an Administrative Law Judge (ALJ). [Tr. 240-241]. A hearing was held on December 8, 2009 at which time testimony was received from the Plaintiff as well as a vocational expert. [Tr. 165-203]. After a consultative psychological evaluation was completed, a supplemental hearing was held on March 30, 2011 at which time the testimony of a different vocational expert was received as well as that of a medical expert. [Tr. 108-164]. The ALJ issued a decision on April 19, 2011 in which he denied the Plaintiff's applications. [Tr. 12-32]. Although the Plaintiff requested that the Appeals Council review the ALJ's decision, it denied review on August 31, 2011 thus rendering the ALJ's decision the final decision of the Commissioner. [Tr. 1-11]. The Plaintiff timely sought judicial review by filing this action on November 4, 2011.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes federal courts to review the Commissioner's denial of social security benefits.

> Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard. Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. In reviewing for substantial evidence, [this Court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].

Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) superseded by regulation on other grounds 20 C.F.R. §416.927(d)(2)).

> The Commissioner uses a five-step process to evaluate disability claims. Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy. The claimant has the burden of production and proof in Steps 1-4. At Step 5, however, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering h[er] age, education, and work experience. If a determination of disability can be made at any step, the Commissioner need not analyze subsequent steps.

Hancock v. Astrue, 667 F.3d 470, 472-73 (4th Cir. 2012) (internal quotations and citations omitted).

Rather than separately stating the applicable facts, the Court will incorporate those facts into the legal analysis.

## DISCUSSION

In this case, the ALJ found at Step 1 that the Plaintiff has not

engaged in substantial gainful activity since her alleged onset date. [Tr. 17]. At Step 2, he found that the Plaintiff has severe impairments of degenerative disc disease, affective mood disorder, anxiety disorder, borderline personality disorder, and substance abuse disorder. [Id.]. The ALJ determined at Step 3 that the Plaintiff does not have impairments or a combination thereof that meets or equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 25]. The ALJ then determined that the Plaintiff retains the Residual Functional Capacity (RFC)[1] to perform less than the full range of light work; that is, she can occasionally lift or carry objects weighing no more than twenty pounds at the time; frequently lift or carry objects weighing up to ten pounds at the time; frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl as well as occasionally climb ladders, ropes and scaffolds. [Tr. 27]. The ALJ further found that the Plaintiff should be limited to occasional public contact and simple, routine, repetitive tasks at level three reasoning per the Dictionary of Occupational Titles (DOT) and should avoid concentrated exposure to hazards. [Tr. 27]. Based on these conclusions, the ALJ found that the Plaintiff did not have any past relevant work. [Tr.

---

[1] RFC is defined by the Social Security Regulations as the most that an individual is able to do despite his or her impairments. 20 C.F.R. §§404.1545(a), 416.945(a).

4

30].

Finally, at Step 5, the ALJ considered the testimony of a vocational expert and found, based on the Plaintiff's age, education, work experience and RFC, that she is capable of performing work which exists in significant numbers in the national economy. [Tr. 31].

The Plaintiff's sole assignment of error is that the ALJ should have determined that her condition of pelvic organ prolapse is a severe impairment and thus should have evaluated its effects on her RFC. The Plaintiff bears the burden of producing substantial evidence that this condition is a severe impairment which has lasted or can been expected to last for twelve consecutive months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). Social Security regulations state that there is no disability if "[the claimant does] not have any impairment or combination of impairments which significantly limit[ ] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). Basic work activities are those that are necessary to do most jobs, such as walking, standing, sitting; the capacity to see, hear, speak, understand, carry out and remember simple instructions; and the ability to use judgment. 20 C.F.R. §404.1521(b).

The Plaintiff's medical records show that in January 2008 she had

minor surgery for stress urinary incontinence. [Tr. 419]. There were no complications and the physician noted the procedure was satisfactory. [Id.]. Indeed, treatment notes from the physician who performed the procedure refer to a history of stress incontinence and note a successful surgical procedure to correct "pelvic floor relaxation with stress urinary incontinence." [Tr 419-427]. The ALJ specifically referred to this corrective procedure at Step 2 of his decision. [Tr. 22, 25]. He also referred to a past history of cystocele, or a hernia protrusion of the bladder, which had been controlled with medication and conservative measures. [Tr. 25]. The ALJ found that prolapse and/or cystocele had not resulted in any limitation of the Plaintiff's ability to perform work-related activities. [Id.]. The Court therefore rejects the Plaintiff's claim that the ALJ failed to consider this condition.

In May 2008, the Plaintiff received an assessment by a social worker for substance abuse treatment at Meridian Recovery Education Center. [Tr. 527]. During the intake procedure, the Plaintiff made a reference to having "prolapse" of undisclosed origin. [Id.]. The reference was made as part of an eleven page recovery assessment form in which her substance abuse issues were recorded. [Tr. 527-535]. The Plaintiff did not receive treatment for prolapse at the Meridian Recovery Education Center and the

6

social worker who recorded her intake information did not make any clinical or medical conclusions concerning prolapse. "[T]he Act and regulations require that an impairment be established by objective medical evidence that consists of signs, symptoms, and laboratory findings, and not only by an individual's statement of symptoms[.]" Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001). Moreover, "[l]icensed clinical social workers are medical sources who do not fall within the Commissioner's list of acceptable medical sources." Foster v. Astrue, 826 F.Supp.2d 884, 886 (E.D.N.C. 2011) (citing 20 C.F.R. §§404.1513(d) & 416.913).

Indeed, one month later in June 2008, the Plaintiff had a consultative examination with Dr. Barbara Dubiel who found no objective medical evidence that the Plaintiff had an impairment based on prolapse. Dr. Dubiel included the following in her notes:

> Stress urinary incontinence was treated with a transobtruator tape procedure on January 17, 2008. Symptoms resolved, but after lifting several boxes while moving, [the Plaintiff] felt a bulge in the vaginal area again. She was not able to follow up for an actual exam with her gynecologist but has an appointment to do so here. She denies stress incontinence with coughing or sneezing but does have urge urinary incontinence and some urinary frequency.
>
> …
>
> Status post surgical procedure for stress urinary incontinence with good results. Episodic urge urinary incontinence with possible recurrent cystocele.

7

[Tr. 466, 469]. Dr. Dubiel found that the Plaintiff had no impairment in her ability to sit, stand, walk, lift and carry. [Tr. 470]. Contrary to the Plaintiff's assignment of error, the ALJ made specific references to Dr. Dubiel's examination and findings at Step 2 of his decision as well as during his consideration of the Plaintiff's RFC. [Tr. 22-23, 28, 30].

In December 2009, the Plaintiff testified at her hearing that her prolapse was "back again." [Tr. 180]. The ALJ referred to this testimony during his consideration of the Plaintiff's RFC. [Tr. 28]. The Plaintiff's medical records contain no evidence of treatment received by her for this condition after the surgery in January 2008. [Tr. 515-523; 553-560]. The Plaintiff has therefore failed to carry her burden of showing objective medical evidence that a condition of pelvic organ prolapse significantly limited her ability to perform basic work activities for twelve consecutive months. Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003) (the determination at Step 2 is based on medical factors alone); Mastro, 270 F.3d at 177; Hancock v. Astrue, 2012 WL 1267888 **5 (M.D.N.C. 2012) (claimant must come forward with objective medical evidence of the impairment and of its severity). "A claimant's statements regarding the severity of an impairment [are] not sufficient." Id.; Young v. Astrue, 2013

8

WL 474787 **9 (M.D.N.C. 2013) ("A claimant's statements regarding the severity of an impairment is not sufficient."). Moreover, to the extent that the Plaintiff's testimony constitutes conflicting evidence, this Court must defer to the Commissioner's decision. Jackson v. Astrue, 467 Fed. App'x. 214 (4th Cir. 2012).

This Court therefore finds that the Plaintiff did not sustain her burden to show that the condition of pelvic organ prolapse was a severe impairment. Nonetheless, even if the ALJ did err by failing to find the prolapse condition to be a severe impairment, it is of no moment. "Where an ALJ has already determined that a plaintiff suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally cannot constitute reversible error, because, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation." Young, 2013 WL 474787 **10 (internal quotation and citations omitted); Jones v. Astrue, 2009 WL 455414 (E.D.N.C. 2009). Such was the case here since the ALJ did consider the Plaintiff's severe impairments of degenerative disc disease, affective mood disorder, borderline personality disorder and substance abuse disorder and continued with the sequential evaluation process. [Tr. 22-23, 25, 30]. "Under such circumstances, any alleged

9

improper application of law at step two caused Plaintiff no prejudice." Young, 2013 WL 474787 **10 (citing Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007)) (other citations omitted).

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings [Doc. 11] is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 15] is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED** and this case is hereby **DISMISSED**.

The Clerk of Court is instructed to enter Judgment.

Signed: February 18, 2013

Martin Reidinger
United States District Judge

10